# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELK CREEK CORPORATION, an Idaho
Corporation,

      Plaintiff / Counter-Defendant

v.

MICROTECH KNIVES, INC., a North Carolina
Corporation,

      Defendant / Counter-Claimant.

Civil Action No. 1:25-CV-00131-SPB

District Judge Susan Paradise Baxter

## ELK CREEK CORPORATION'S
## LPR 4-3 OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

OVERVIEW OF THE PATENTED TECHNOLOGY....................................................1

ASSERTED CLAIM 9.............................................................................................5

AGREED AND DISPUTED CONSTRUCTIONS ........................................................5

CLAIM CONSTRUCTION PRINCIPLES...................................................................6

ARGUMENT.........................................................................................................8

I.      THE   COURT   SHOULD   ADOPT   THE   PARTIES'   AGREED
        CONSTRUCTIONS.......................................................................................8

        A.      "Handle," "Stop Plate Positioned Within The Handle," And
                "Mate" Should Be Given Their Plain and Ordinary Meaning...................8

        B.      "On The Surface Of The Handle" ........................................................8

        C.      "Integral Tang Connected To The Thrust Mechanism And The
                Button"..........................................................................................8

II.     THE   COURT   SHOULD   ADOPT   ELK   CREEK'S   PROPOSED
        CONSTRUCTIONS OF THE DISPUTED TERMS ...........................................8

        A.      "Thrust Mechanism" ........................................................................8

                1.      "Thrust Mechanism" Should Be Given Its Plain And
                        Ordinary Meaning...................................................................9

                2.      "Thrust Mechanism" Is Not A Means-Plus-Function
                        Limitation ............................................................................10

                        a.      Microtech cannot overcome the presumption that
                                "thrust mechanism" is not a means-plus-function
                                limitation....................................................................11

                        b.      Claim 9 recites definite structure; therefore, "thrust
                                mechanism" is not a means-plus-function limitation........11

                3.      Even If "Thrust Mechanism" Is A Means-Plus-Function
                        Limitation, The Court Should Reject Microtech's Proposed
                        Construction Because It Improperly Imports Limitations
                        Into Claim 9..........................................................................13

B.    "A First Angled Surface And A Second Angled Surface" ......................16

      1.    The Court Should Adopt Elk Creek's Proposed
          Construction .................................................................................16

      2.    The Court Should Reject Microtech's Proposed
          Construction Because It Excludes The Preferred
          Embodiment And Is Not Supported By The Evidence ................19

C.    "Constrained From Movement In Two Planes" ........................19

      1.    This Term Should Be Given Its Plain And Ordinary
          Meaning, and the Court Should Reject Microtech's
          Proposed Construction ...............................................................20

CONCLUSION.........................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Amhil Enterprises Ltd. v. Wawa, Inc.*,
81 F.3d 1554 (Fed. Cir. 1996) ............................................................7

*Apex, Inc. v. Raritan Computer, Inc.*,
325 F.3d 1364 (Fed. Cir. 2003)......................................................11, 12

*Applied Med. Res. Corp. v. United States Surgical Corp.*,
448 F.3d 1324 (Fed. Cir. 2006)...........................................................16

*B. Braun Med., Inc. v. Abbott Labs.*,
124 F.3d 1419 (Fed. Cir. 1997)............................................................7

*CCS Fitness*, Inc. *v. Brunswick Corp.*,
288 F.3d 1359 (Fed. Cir. 2002)..........................................6, 7, 9, 11

*Egenera, Inc. v. Cisco Sys., Inc.*,
972 F.3d 1367 (Fed. Cir. 2020)...........................................................15

*EPOS Techs. Ltd. v. Pegasus Techs. Ltd.*,
766 F.3d 1338 (Fed. Cir. 2014)................................................7, 14, 19

*Flo Healthcare Sols., LLC v. Kappos*,
697 F.3d 1367 (Fed. Cir. 2012)...........................................................12

*GPNE Corp. v. Apple Inc.*,
830 F.3d 1365 (Fed. Cir. 2016)...........................................................16

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
91 F.3d 1580 (Fed. Cir. 1996)......................................................11, 12

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004) ...........................................................6

*Integrity Worldwide LLC v. Rapid-EPS Ltd.*,
2018 U.S. Dist. LEXIS 234462, 2018 WL 3609430 (N.D. Tex. May 29, 2018) .................12

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
382 F.3d 1354 (Fed. Cir. 2004)...........................................................12

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*,
248 F.3d 1303 (Fed. Cir. 2001)............................................................7

*Middleton Inc. v. Minnesota Mining and Mfg. Co.*,
    311 F.3d 1384 (Fed. Cir. 2002)....................................................................................10

*Nanology Alpha LLC v. WITecWissen. Instr. & Tech. GmbH*,
    2017 U.S. Dist. LEXIS 197725, 2017 WL 5905272 (E.D. Tex. Nov. 30, 2017) .................12

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)........................................................................... 6, 14, 16

*Powell v. Home Depot USA, Inc.*,
    663 F.3d 1221 (Fed. Cir. 2011)....................................................................................16

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*,
    222 F.3d 958 (Fed. Cir. 2000)......................................................................................14

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    574 U.S. 318 (2015) .......................................................................................................6

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*,
    988 F.2d 1165 (Fed. Cir. 1993)....................................................................................20

*Unicorn Glob. Inc. v. Golabs, Inc.*,
    Civil Action No. 3:19-CV-0754-N,
    2020 U.S. Dist. LEXIS 91861, 2020 WL 274569 (N.D. Tex. May 26, 2020) ......................12

*Vincent Sys. GmbH v. Fillauer Co., Inc.*,
    No. 1:23-cv-2, 2025 U.S. Dist. LEXIS 119589, 2025 WL 1748359
    (E.D. Tenn. June 24, 2025)...........................................................................................12

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)....................................................................................6, 7

*Wenger Mfg., Inc., v. Coating Mach. Sys., Inc.*,
    239 F.3d 1225 (Fed. Cir. 2001)....................................................................................14

*Willison v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) (en banc) ...............................................................11, 12

**Statutes**

35 U.S.C. § 112(f) .......................................................................................................11

## INTRODUCTION

Before the Court is Elk Creek Corporation's ("Elk Creek") Opening *Markman* Claim Construction Brief regarding U.S. Patent No. 9,498,889 ("the '889 Patent"). Elk Creek respectfully submits that, with the exception of the term, "a first angled surface and a second angled surface," the claims do not require construction. The '889 Patent uses "a first angled surface and a second angled surface" to describe a "compound angle[d]" surface, which is also shown in Figures 38 and 39.

Microtech Knives, Inc.'s ("Microtech") proposed claim constructions, in contrast, are convoluted and would obscure, rather than clarify, the claim language. In addition, Microtech's proposed constructions are improper for at least the following reasons: (1) for failing to overcome the presumption that the "thrust mechanism" limitation is not a means-plus-function limitation; (2) for failing to perform the proper two-step analysis for the alleged means-plus-function limitation; (3) for improperly attempting to read limitations into the claim; and (4) for attempting to construe the asserted claim to exclude the preferred embodiment. For at least these reasons, Microtech's proposed claim constructions should be rejected.

## OVERVIEW OF THE PATENTED TECHNOLOGY

Elk Creek is a small, privately held Idaho company that develops unique knives and is the owner of the '889 Patent. In 2015, Elk Creek revolutionized the market for out-the-front ("OTF") knives, also known colloquially as switchblades, with the launch of its Deadlock knife, which embodies the inventions described in the '889 Patent.

OTF knives generally consist of a blade concealed within a handle that is propelled by a spring. The stored energy of the spring is released by a button, which then thrusts the blade in a linear path along the length of the handle. As shown in Figures 49 and 55a of the '889 Patent, reproduced and annotated below, at each end of the spring (shown in green) is a block (shown in red) that catches a portion (shown in purple) of the blade. Activated by the button, a shuttle plate (shown

in yellow) moves the spring blocks as described below. When the blade is fully retracted or fully deployed, a lock within the handle engages with the tang of the blade to prevent movement of the blade along the length of the handle. When the button is moved, it loads and releases the spring. During the loading phase, shown in Figures 52a and 55b reproduced and annotated below, one block contacts the blade. The lock prevents the blade from moving, and the other block moves along the length of the handle as the shuttle plate moves. The increased distance between the two blocks causes the spring to stretch while the blade is held in place by the lock. Once the spring is fully stretched, further movement of the button and shuttle plate releases the lock. Once the lock releases, the blade is no longer prevented from movement and the stored energy within the spring acts upon the block contacting the blade and propels the blade along the length of the handle. *See* '889 Patent (Ex. A hereto), at 1:23–44.



As explained in the '889 Patent, movement needs to be restricted in "all six degrees of freedom inherent in a free floating blade." *Id.*, 1:54–58. As illustrated below, this includes three perpendicular translational motions (along the axes of the three perpendicular planes) and three rotational motions about the center of mass of the blade.



The blade can move within the three planes: 1) a depth (front-to-back) plane, shown in red; 2) a horizontal (side-to-side) plane, shown in green; and 3) a vertical (up-and-down) plane, shown in blue. In OTF knives, the force of the spring moves the blade forwards and backwards between the fully retracted and fully deployed positions. However, a knife's ability to resist movement in the other two planes (the side-to-side plane and up-and-down plane) is what provides the rigidity to the knife. *See id.*, 15:29-37 ("the blade 2 will be wedged tightly against any possible movement in the two principal planes, responsible for rigidity. Movement side to side along the flat plane … and movement up and down, perpendicular to the flat plane of the blade …").

Historically, OTF knives suffered from a key defect. Although a lock may constrain front-to-back movement along the length of the blade, the clearances needed to allow the blade to travel along the length of the handle result in an undesirable amount of movement or "play" in the blade when deployed. *Id.*, at 1:54–58. In other words, these clearances still allow the blade to move side-to-side or up-and-down, even if the blade is restricted from movement in the front-to-back plane by the lock of the knife. This "weak and wobbly" result caused OTF knives to generally be viewed as inferior to fixed-blade knives and folding knives, where rigidity and the absence of blade play are widely understood indicators of build quality. *Id.*, 2:7–13.

In April 2015, Gavin and Grant Hawk, a father and son team, revolutionized the design of OTF knives by designing a mechanism to virtually eliminate movement of the deployed blade by

stabilizing it in the side-to-side and up-and-down planes. In general, the Hawks developed a design to wedge the blade in both planes. More particularly, the design incorporates a tapered stop pin that is connected to the tang of the blade and a compound, angled surface located within the handle.

As shown in Figures 38 and 39, reproduced and annotated below, when the blade is propelled out of the handle of the knife (along direction *u* shown in Figure 38), the stop pin (shown below in blue) mates with the compound, angled surface (shown below in orange) to produce a dual effect of wedging the blade into a fixed position in two planes at once. *See* '889 Patent, 15:29–33; 16:5–7. The compound, angled surface is formed of two angles: a first angle (illustrated at 24 degrees in Fig. 38) that is directed sideways and a second angle that is directed upwards (illustrated at 45 degrees in Fig. 39). Figure 39 shows the second angle and is a cross-sectional view of the same surface shown in Figure 38, which shows the first angle. Similar to how a doorstop lifts a door upward when pushed under the door, the wedging relationship between the stop pin and upward angle of the surface lifts the blade (in direction *v* shown in Figure 39) to prevent the blade from moving up-and-down. The angle of the surface that is directed sideways similarly produces a second wedging relationship that pushes the blade sideways (in direction *w* shown in Figure 38) to prevent the blade from moving side-to-side. Notably, the stop plate does not prevent the blade from being retracted within the handle by actuation of the button and movement of the spring.



## ASSERTED CLAIM 9

Elk Creek claims that Microtech infringes claim 9 of the '889 Patent. Claim 9 is reproduced

below and the disputed terms are shown in **bold**:

A knife comprising:

a handle;

a button on the surface of the handle, the button being movable between an open position
and a closed position;

a **thrust mechanism**;

a blade having an integral tang connected to the thrust mechanism and the button, wherein
when the button is moved from the closed position to the open position the thrust
mechanism moves the blade from being positioned entirely within the handle to a
position extending from an end of the handle and wherein when the button is moved
from the open position to the closed position the thrust mechanism moves the blade from
a position extending from the end of the handle to being positioned within the handle;

a stop pin connected to the tang; and

a stop plate positioned within the handle, the stop plate having **a first angled surface and a
second angled surface**;

wherein the stop pin is configured to mate with both the first angled surface and the second
angled surface when the blade is in the position extending from the end of the handle;

wherein when the stop pin mates with both the first and second angled surfaces the blade is
**constrained from movement in two planes**.

## AGREED AND DISPUTED CONSTRUCTIONS

As shown in the table below, the parties agree on the construction of five terms and dispute

the construction of three terms of claim 9 of the '889 Patent.

| Agreed Constructions | Disputed Constructions |
| --- | --- |
| 1. "handle"<br>2. "stop plate positioned within the handle"<br>3. "mate"<br>4. "on the surface of the handle"<br>5. "integral tang connected to the thrust mechanism and the button" | 1. "thrust mechanism"<br>2. "a first angled surface and a second angled surface"<br>3. "constrained from movement in two planes" |

## CLAIM CONSTRUCTION PRINCIPLES

Claim construction is a question of law, informed by intrinsic evidence, and extrinsic evidence where necessary to understand "the background science or the meaning of a term in the relevant art during the relevant time period." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). "Intrinsic" evidence—that is, the patent claims, specification, and the prosecution history—is more compelling than "extrinsic" evidence, such as dictionary definitions and expert testimony. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314–19 (Fed. Cir. 2005). "[I]ntrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). If the intrinsic record is sufficient to resolve a dispute, extrinsic evidence need not be consulted. *Phillips*, 415 F.3d at 1316–17. Where extrinsic evidence is consulted, it is given less weight than intrinsic evidence. *Id.* at 1317–18. It also may not be used to contradict intrinsic evidence. *Vitronics*, 90 F.3d at 1584.

Claim construction begins with the claim language, which is construed as it would be understood by "a person of ordinary skill in the art … at the time of invention" reading the patent as a whole. *Phillips*, 415 F.3d at 1312–16. There is a "heavy presumption" that a claim term carries its ordinary and customary meaning. *CCS Fitness*, Inc. *v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Further, the specification "necessarily informs the proper construction of the claims" and "is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315–16. It "may reveal a special definition given to a claim term by the patentee." *Id.* at 1316. *See, e.g., Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) (patentee may act as its own lexicographer by setting out a specific meaning in the specification "in a manner sufficient to give one of ordinary skill in the art notice of the change from ordinary meaning").

"[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the

intrinsic record that the patentee intended the claims to be so limited." *EPOS Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1347 (Fed. Cir. 2014) (cleaned up). At the same time, courts must be careful not to construe a term narrowly in a manner that excludes the preferred embodiment[1] shown by the intrinsic evidence. *Vitronics*, 90 F.3d at 1583 (rejecting construction where "a preferred (and indeed only) embodiment in the specification would not fall within the scope of the patent claim").

Sometimes, a patentee will include a "means-plus-function" limitation in a patent claim. Where a claim limitation is expressed in means-plus-function language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112(f); *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). Construing a means-plus-function limitation involves two inquiries. The first step requires "a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "[t]he next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.* A structure is corresponding "only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* Moreover, the focus of the corresponding structure inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id.* When a claim term does not use the word "means," there is a presumption that it is not a means-plus-function limitation. *CCS Fitness, Inc.*, 288 F.3d at 1369 ("[A] claim term that does not use 'means' will trigger the rebuttable presumption that § 112[(f)] does not apply.").

---

[1] A "preferred embodiment" is a "preferred" example of an invention in the written description. *See Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1559 (Fed. Cir. 1996) ("A preferred embodiment, however, is just that, and the scope of a patentee's claims is not necessarily or automatically limited to the preferred embodiment.").

# ARGUMENT

## I. THE COURT SHOULD ADOPT THE PARTIES' AGREED CONSTRUCTIONS

### A. "Handle," "Stop Plate Positioned Within The Handle," And "Mate" Should Be Given Their Plain and Ordinary Meaning

Although the parties disagreed on constructions of all terms in their LPR 4.2 Joint Claim Construction Chart (Dkt. 36), after meeting and conferring, the parties agreed that the following terms should be given their plain and ordinary meaning: 1) "handle"; 2) "stop plate positioned within the handle"; and 3) "mate". These terms are straightforward and readily understood. Accordingly, to the extent the Court construes these terms, they should be given their plain and ordinary meaning.

### B. "On The Surface Of The Handle"

The parties agree that the term "on the surface of the handle" should be construed as "on the exterior of the handle." The Court should adopt the parties' agreed construction.

### C. "Integral Tang Connected To The Thrust Mechanism And The Button"

The parties agree that the term, "integral tang connected to the thrust mechanism and the button" should be construed as "integral tang connected, directly or indirectly, to the thrust mechanism and the button." The Court should adopt the parties' agreed construction.

## II. THE COURT SHOULD ADOPT ELK CREEK'S PROPOSED CONSTRUCTIONS OF THE DISPUTED TERMS

The parties dispute the meaning of three claim terms of the '889 Patent. Each dispute is addressed below. The intrinsic record mandates the adoption of Elk Creek's proposed constructions, while Microtech's proposed constructions are unsupported, stray from precedent, and invite error. Accordingly, Microtech's proposed constructions should be rejected.

### A. "Thrust Mechanism"

Claim 9 recites a "thrust mechanism" that "moves the blade" in and out of the handle when the user moves a button between the "open position" and "closed position" of the knife. The parties' proposed constructions for this term are as follows:

| Elk Creek's Construction | Microtech's Construction |
|---|---|
| Plain and ordinary meaning. Alternatively, a mechanism capable of moving the blade in and out of the handle. | Means-plus-function, subject to 35 U.S.C. § 112(f).<br><br>Function: moving the blade from being positioned entirely within the handle to a position extending from and end of the handle and moving a blade from a position extending from the end of the handle to being positioned entirely within the handle.<br><br>Structure: shuttle plate 80, shuttle plate trip bosses 72a and 72b, thrust blocks 84, main springs 94, and threaded spring anchors 92, de-locking control hooks 66a and 66b, stop pin 48, control hook springs 66, rocker bar 62, lock bar 50, guide pins 88, and dowel pin 20b.<br><br>Alternative structures comprising one or more subsets of the components noted above including: shuttle plate 89, shuttle plate trip bosses 72a and 72b, thrust blocks 84, main springs 94, threaded spring anchors 92, de-locking control hooks 66a and 66b, and hook springs 66. |

1. **"Thrust Mechanism" Should Be Given Its Plain And Ordinary Meaning**

There is a "heavy presumption" that a claim term carries its ordinary and customary meaning. *CCS Fitness*, 288 F.3d at 1356. Microtech cannot overcome this presumption by simply pointing to the preferred embodiment or by trying to import components of embodiments into claim 9. *Id.*

The specification of the '889 Patent includes several references to "thrust mechanism" and consistently uses that term in accordance with its plain and ordinary meaning, that is, a mechanism to thrust or move something; here, moving the blade in and out of the handle. Claim 9 itself recites that the thrust mechanism "moves the blade from being positioned entirely within the handle to a position extending from an end of the handle." '889 Patent, 17:60–66. The specification applies this plain and ordinary meaning and describes the "thrust mechanism" as enabling automatic opening and closing of the blade (*id.*, 1:36–44) and moving the blade back and forth from an open position where the blade is outside the handle to closed position where the blade is inside the handle. *Id.*, 2:29–40; 3:39–46; 4:10–11. A nonlimiting example of the "thrust mechanism" is shown in Fig. 49:



"Thrust mechanism" is not used in claim 9, or anywhere in the '889 Patent, in any special or unaccustomed way and is understandable using its ordinary, English language meaning (*e.g.*, a mechanism for thrusting something—in this case, a blade). Likewise, the patentee never disclaimed any portion of "thrust mechanism." Nothing in the prosecution history for the '889 Patent shows any distinguishing over prior art, disavowal of the plain and ordinary meaning, or other mention of the term "thrust mechanism." Absent some showing of a clear and unambiguous disavowal during the prosecution history of the patent, the term "thrust mechanism" is entitled to its plain and ordinary meaning. *See, e.g., Middleton Inc. v. Minnesota Mining and Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002) (holding that absent a clear and unambiguous disclaimer during prosecution, claim terms are entitled to their ordinary meaning).

  2.  **"Thrust Mechanism" Is Not A Means-Plus-Function Limitation**

In an improper attempt to narrow claim 9 and fabricate a non-infringement defense, Microtech offers a 133-word construction for "thrust mechanism" and demands that the term be construed as a means-plus-function limitation under 35 U.S.C. § 112(f). But "thrust mechanism" is not a means-plus-function limitation. Even if it were, Microtech's proposed construction fails because it imports structural components into claim 9 that are not recited in the claim and have nothing to do with the function of the thrust mechanism. The Court should reject Microtech's proposed construction.

### a. Microtech cannot overcome the presumption that "thrust mechanism" is not a means-plus-function limitation

Under means-plus-function claiming, an inventor may draft a claim element in a manner that only describes a function without describing a particular structure that performs that function. *Willison v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (en banc). But claim 9 does not recite a "means for" performing a function, which raises a presumption that "thrust mechanism" is not a means-plus-function limitation under § 112(f). *CCS Fitness, Inc.*, 288 F.3d at 1369. Moreover, "the fact that a particular mechanism … is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function'" because "[m]any devices take their names from the functions they perform." *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) (e.g. "filter," "brake," "clamp," "screwdriver," and "lock"). Microtech cannot present any evidence to overcome the presumption that § 112(f) does not apply; therefore, the presumption prevails. *Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371–72 (Fed. Cir. 2003) ("If the party who must bring forth evidence fails to proffer sufficient evidence to meet its burden, the presumption, either for or against the application of 112[(f)] prevails.").

### b. Claim 9 recites definite structure; therefore, "thrust mechanism" is not a means-plus-function limitation

Notwithstanding the presumption that it is not a means-plus-function limitation, a claim limitation that does not recite a "means for" may still be construed under section 112(f) if it is "expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112(f). Whether a claim recites definite structure to perform the claimed function is evaluated based on the meaning of the claim as a whole, and whether the limitations suggest sufficiently definite structure to a person having ordinary skill in the

art ("POSITA"). *See Apex*, 325 F. 3d at 1373–74. Likewise, a term does not invoke 35 U.S.C §112(f) when it "has a reasonably well understood meaning in the art." *Willison*, 792 F.3d at 1348.

For example, the Federal Circuit refused to construe "adjustment mechanism" as a means-plus-function limitation because it "imparts sufficient structure" and "designate[s] a class of structures that are generally understood to persons of skill in the art." *See Flo Healthcare Sols., LLC v. Kappos*, 697 F.3d 1367, 1374-75 (Fed. Cir. 2012). *See also Greenberg*, 91 F.3d at 1583 ("detent mechanism" was not a means-plus-function limitation because "detent mechanism" had a generally understood meaning in the art even though the term did "not call to mind a single well-defined structure"); *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359-61 (Fed. Cir. 2004) (a "connector assembly for" was not means-plus-function because "connector" was a noun that connoted a meaning to a generic structure).

In fact, courts frequently refuse to apply 35 U.S.C §112(f) to the term "mechanism" when it is modified by a term that is generally understood in the art. For example, one court found that "rotating mechanism" is not means-plus-function as it "refer[s] to a specific type of structural element that could be configured in a variety of ways" and "[t]o a POSITA, it should be clear that the term 'rotating mechanism' … refers to a configuration of mechanical structures arranged to permit rotation." *Unicorn Glob. Inc. v. Golabs, Inc.*, Civil Action No. 3:19-CV-0754-N, 2020 U.S. Dist. LEXIS 91861, 2020 WL 274569, at *15 (N.D. Tex. May 26, 2020). *See also, e.g., Vincent Sys. GmbH v. Fillauer Co., Inc.*, No. 1:23-cv-2, 2025 U.S. Dist. LEXIS 119589, 2025 WL 1748359, at *20 (E.D. Tenn. June 24, 2025) ("coupling mechanism" is not mean-plus-function as a POSITA would understand it to convey structures that cause components to move together); *Integrity Worldwide LLC v. Rapid-EPS Ltd.*, 2018 U.S. Dist. LEXIS 234462, 2018 WL 3609430 at *4-5 (N.D. Tex. May 29, 2018) ("locking mechanism" is not mean-plus-function); *Nanology Alpha LLC*

*v. WITecWissen. Instr. & Tech. GmbH*, [2017 U.S. Dist. LEXIS 197725, 2017 WL 5905272, at \*9-11](#)
(E.D. Tex. Nov. 30, 2017) ("movement mechanism" is not mean-plus-function because the claims
recite the interaction of the movement mechanism with other structural elements).

Here, claim 9 recites definite structure to perform the described function of the thrust
mechanism; therefore section 112(f) does not apply. The parties agree that the function of the thrust
mechanism is moving the blade in and out of the handle. Dkt. 36 at 6. The noun "thrust," which
modifies "mechanism" here, has a well-understood meaning since, as explained in the background
section, OTF knives "propel" the blade out the front of the handle. '889 Patent, 1:23-30. This is
consistent with the dictionary definition of the term, which indicates that "thrust" means "a forward
or upward push" and a "driving force". *See* Ex. B.1, THRUST Merriam-Webster Dictionary; Ex.
B.2, THRUST Cambridge English Dictionary.

Microtech has not, and cannot, present any credible evidence that the "thrust mechanism" is
anything other than a definite structure. Again, the patentee did not claim a "means for thrusting,"
but instead chose the noun, "mechanism," to convey to a POSITA a definite structure. Similar to the
cases cited above, which found that various "mechanisms" denote types of devices that would be
understood in the mechanical arts, the use of "thrust mechanism" in the '889 Patent also imparts
sufficient structure. Further, nothing in the intrinsic record suggests the patentee intended to limit
"thrust mechanism" to the specific structure described in the preferred embodiments and equivalents.
Thus, when read as a whole, in view of what the terms and intrinsic record convey to a POSITA,
claim 9 contains definite structure to perform the described function, and § 112(f) is not applicable.

### 3. Even If "Thrust Mechanism" Is A Means-Plus-Function Limitation, The Court Should Reject Microtech's Proposed Construction Because It Improperly Imports Limitations Into Claim 9

Finally, even if the Court determines that "thrust mechanism" is a means-plus-function
limitation, Microtech's proposed construction should be rejected because it imports limitations into

claim 9 and incorporates elements that have nothing to do with, and are not clearly linked to, the function of the "thrust mechanism". Federal Circuit precedent forecloses this "cardinal sin[] of patent law." *Phillips*, 415 F.3d at 1320 ("[R]eading a limitation from the written description into the claims" is "one of the cardinal sins of patent law."); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 966 (Fed. Cir. 2000) ("[I]t is improper to read limitations from the written description into a claim."). This prohibition against reading limitations into claims extends to means-plus-function limitations. Courts may not import "structural limitations from the written description that are unnecessary to perform the claimed functions." *Wenger Mfg., Inc., v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001). Further, as discussed above, it is improper to read limitations from a preferred embodiment into the claim absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited. *See EPOS Techs.*, 766 F.3d at 1347.

Here, Microtech improperly attempts to import into claim 9 the preferred embodiment, rather than focusing on the structure necessary to perform the claimed functions. As explained by the '889 Patent, movement of the blade is achieved by a "[t]hrust block 84 [which] is a spring powered component that drives blade 2 and integral tang 34 toward open and closed." '889 Patent, 9:47-51; *see also id.*, 1:23-30 (indicating the blade is propelled along a linear path by the "stored energy of a compressed spring"); 10:10-15 ("spring powered propulsion"). The threaded spring anchors and guide pins identified by Microtech are one embodiment, but not necessary to move the blade. Thus, at most, the necessary structure to perform the identified function is the spring-powered thrust block.

In addition, Microtech seeks to import into claim 9 parts and structure that have nothing to do with the function of the "thrust mechanism," that is, moving the blade in and out of the handle. Instead, Microtech wants to read into claim 9 components of the "locking mechanism," which performs the different function of locking—not moving—the blade. *See id.*, 4:4–6 (the "locking

mechanism…lock[s] the blade in the open position and closed position."). These components include the "de-locking control hooks 66a and 66b," "control hook springs 66," "rocker bar 62," "lock bar 50," and "dowel pin 20b." Dkt. 36 at 6–13*; see also* '889 Patent, 8:47-9:54 (identifying these components as part of the locking mechanism); 10:38–47 (describing operation of locking mechanism); 2:41–43 ("The locking mechanism may include a lock bar, rocker bar, and ball. The lock bar has a control pin and cavity."). Likewise, Microtech improperly attempts to incorporate a specific embodiment of the shuttle plate, such as trip bosses 72a and 72b, that is used to actuate the locking mechanism. *See id.* at 11:61–66. None of these components are necessary to perform the function of the "thrust mechanism;" therefore, they cannot be read into the claim.

In addition, claim 9 does not recite a "locking mechanism," and the patent consistently describes the "thrust mechanism" as a structure separate from the "locking mechanism." *Id.* at 2:20–21 ("One embodiment of a knife comprises a handle, button, blade, locking mechanism, and thrust mechanism."); 2:30-40 ("movement of the button … releases the locking mechanism and the thrust mechanism moves the blade to an open position" and to a "closed position"); 10:10–14 (indicating that the locking mechanism itself is propelled with the blade). The fact that the patent describes the "locking mechanism" and "thrust mechanism" as different structures that perform different functions is fatal to Microtech's proposed construction.

In sum, even if § 112(f) were to apply, the inquiry must be limited to identifying only the structure necessary to perform the claimed function, not an exhaustive catalog of embodiment-specific components. *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1373–76 (Fed. Cir. 2020) (holding that for § 112(f) limitations, the corresponding structure is limited to the structure clearly linked to performing the claimed function, not all components disclosed in an embodiment). Microtech's proposed construction fails this requirement and must be rejected.

**B.    "A First Angled Surface And A Second Angled Surface"**

Claim 9 recites a "stop plate positioned within the handle" where the stop plate has "a first angled surface and a second angled surface." The claim also recites a "stop pin" that "mates with both the first and second angled surfaces to constrain the blade from moving in two planes." The parties' proposed construction of "a first angled surface and a second angled surface" are as follows:

| Elk Creek's Construction | Microtech's Construction[2] |
|---|---|
| A surface having a first angle with respect to a direction of travel of the stop pin and a horizontal axis of the blade and a second angle with respect to an axis of the stop pin and the horizontal axis of the blade | Plain and ordinary meaning. Alternatively, the second angled surface is a separate and distinct surface from the first angled surface. |

**1.    The Court Should Adopt Elk Creek's Proposed Construction**

Only Elk Creek's proposed construction is true to the claim language and consistent with the specification of the '889 Patent, which consistently refers to the "first angle" and "second angle" as part of the *same* surface. Microtech's proposed construction, on the other hand, ignores the specification and reads the preferred embodiment out of the claim.

Elk Creek's construction is reinforced by the fact that the specification of the '889 Patent consistently describes and shows the "first angled surface" and "second angled surface" of the illustrated example as corresponding to a single continuous surface angled in two directions. The specification thus does not require two distinct and separate surfaces as Microtech proposes. The patent specification is the "primary basis" and "single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. Where "the specification repeatedly and consistently characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization." *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016) (affirming

---

[2] Elk Creek disputes that Microtech's proposed construction is consistent with the plain and ordinary meaning as "the use of two terms in a claim requires that they connote different *meanings*, not that they necessarily refer to two different *structures*." *Applied Med. Res. Corp. v. United States Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006); *Powell v. Home Depot USA, Inc.*, 663 F.3d 1221, 1231–32 (Fed. Cir. 2011).

construction that limited the claim term "node" to a "pager" because the specification "repeatedly and exclusively" referred to "nodes" as "pagers").

Here, the preferred embodiment confirms that the two angles formed by this *single surface* of the stop plate create the unique wedging mechanism disclosed and claimed in the '889 Patent. This is shown most clearly in Figures 38 (top view of stop plate) and 39 (cross-sectional view of the same stop plate shown in Figure 38). The "first angle" can be seen in Figure 38, which shows the horizontal (side-to-side) plane, as illustrated in green above and reproduced in part below. When the stop pin 48 (shown in blue) engages with the angled surface of the stop plate (shown in orange), the surface of the stop plate is angled in such a way as to push the stop pin and the blade sideways (in the direction *w*) to prevent the blade from moving side-to-side:



Just as Figure 38 illustrates, Elk Creek's proposed construction accurately encompasses this first angle as the one formed "with respect to a direction of travel of the stop pin [the direction *u*] and a horizontal axis of the blade [the direction *w*]." This is precisely how the written description of the patent describes the first angled surface. '889 Patent, 3:54-58; 11:44-60. This is also consistent with how the first angled surface is described in dependent claim 10. *Id.*, 18:15-20 ("wherein the first angled surface is substantially at 24 degrees with respect to a direction of travel of the stop pin and a horizontal axis of the blade").

"FIG. 39 is a cross section view as indicated in FIG. 38." *Id.*, 6:1. Figure 39 shows the vertical (up-and-down) plane, as illustrated in blue above and reproduced in part below. Figure 39 and the specification confirm that the *same surface* is also angled such that the stop pin (and blade) is pushed upward (in direction *v*) to prevent the blade from moving up-and-down:



Just as Figure 39 illustrates, Elk Creek's proposed construction describes this second angle as the one formed "with respect to an axis of the stop pin [48] and the horizontal axis of the blade." This is also how the written description describes the second angled surface. '889 Patent, 3:54–58; 11:44–60. This is also consistent with how the second angled surface is described in dependent claim 10 ("the second angled surface is substantially at 45 degrees with respect to an axis of the stop pin and the horizontal axis of the blade").

In sum, the preferred embodiment confirms that the "first angled surface and second angled surface" of the stop plate encompasses a single, continuous surface formed of two angles: the first angle (directed sideways) and the second angle (directed upwards). When the blade is propelled out of the handle (along direction *u* shown in Figure 38), the stop pin mates with the angled surface of the stop plate to wedge the blade into a fixed position in two planes. *Id.*, 15:29–33; 16:5–7. True to the specification, Elk Creek's proposed construction encompasses this compound surface and describes the first and second angles that the surface forms. Accordingly, the Court should adopt Elk Creek's proposed construction.

### 2. The Court Should Reject Microtech's Proposed Construction Because It Excludes The Preferred Embodiment And Is Not Supported By The Evidence

Microtech's proposed construction that the "first angled surface" and "second angled surface" must be "separate and distinct" is flawed and should be rejected for at least two reasons.

First, it reads the preferred embodiment out of the claim. "A claim construction that excludes a preferred embodiment … is rarely, if ever correct and would require highly persuasive evidentiary support." *EPOS Techs.*, 766 F.3d at 1347 (cleaned up) (vacating court's claim construction because it "reads out preferred embodiments"). Here, as described above, the preferred embodiment of the knife disclosed in the '889 Patent includes a stop plate with a *single* surface having a plurality of angles. Microtech's *separate-surface* construction reads this *single-surface* preferred embodiment out of claim 9 and should be rejected for that reason alone.

Second, Microtech's proposed construction finds no support in the specification. Microtech points to nothing in the specification to suggest the "first angle" and "second angle" are required to be formed by two separate surfaces. It does not point to any figure in the '889 Patent identifying these alleged separate surfaces because none exist. To the contrary, the figures relied upon by Microtech include Figures 38 and 39, which illustrate the same surface. Thus, the intrinsic evidence does not support Microtech's proposed construction.

### C. "Constrained From Movement In Two Planes"

Claim 9 includes the limitation that "when the stop pin mates with both the first and second angled surfaces the blade is ***constrained from movement in two planes***." '889 Patent, 18:12–14 (emphasis added). The parties' proposed construction of "constrained from movement in two planes" are as follows:

| Elk Creek's Construction | Microtech's Construction |
|---|---|
| Plain and ordinary meaning. Alternatively, to restrict from movement side to side and up and down. | Limiting movement in two directions. |

### 1. This Term Should Be Given Its Plain And Ordinary Meaning, and the Court Should Reject Microtech's Proposed Construction

"Constrained from movement in two planes" should be given its plain and ordinary meaning. The parties do not appear to dispute the meaning of the first part of the term, "constrained from movement." That portion of the term is readily understandable, and the specification does not use "constrained," "movement," or "constrained from movement" in any unusual way.

The only material dispute for this term is whether "two planes" should be given its plain and ordinary meaning, as Elk Creek proposes, or whether it should be construed as "two directions," as Microtech proposes. Elk Creek's plain-and-ordinary meaning construction is the correct one and should be adopted. Microtech's proposed construction, on the other hand, completely reads the term "planes" out of claim 9 and replaces it with a different term, "directions." This is improper as a matter of law. *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) (rejecting a proposed claim construction that "would read an express limitation out of the claims . . . because courts can neither broaden nor narrow claims to give the patentee something different than what he has set forth") (cleaned up).

Microtech's proposed construction is also inconsistent with the commonly understood meaning of a plane. A plane and a direction are two different things. A plane is a flat, two-dimensional surface that extends infinitely in all directions. A direction, on the other hand, defines the path of an object or vector within a plane. As an example, one may use a map (plane) to plan a route of travel East (direction) on Interstate-76 (vector) from Pittsburgh to Philadelphia. That same vector (Interstate) can be used to travel the opposite direction (West) on the same plane. In other words, movement between point A and point B in the same plane—whether those points are Pittsburgh and Philadelphia or two locations in an OTF knife—is possible in two directions: from point A to point B, and from point B to point A.

Here, the claim language itself and the specification make clear that the blade is constrained from movement in two *planes*, not two *directions*. As detailed in the specification, the blade is constrained from movement in the horizontal side-to-side ("flat") plane and in the separate, vertical ("perpendicular") up-and-down plane:

> [T]he blade 2 will be wedged tightly against any possible movement in the two principle planes, responsible for rigidity. Movement side to side along the flat plane of the blade is controlled by the first angled surface 71 and movement up and down, perpendicular to the flat plane of the blade is controlled by the second angled surface 73 corresponding to the taper of the stop pin.

'889 Patent, 15:31–37. Thus, each plane encompasses movement in two directions: side-to-side in the flat plane and up and down in the vertical plane. This is illustrated below, with the flat plane (shown in green) encompassing movement in the left and right directions, and the vertical plane (shown in blue) encompassing movement in the up and down directions. The specification consistently refers to constraining the blade from movement in these *two planes*, not in only *two directions*. *Id.*, 3:31–33; 4:22–25; 11:44–47. By constraining movement in these two planes, the wedging system disclosed in the '889 Patent restricts movement in at least *four* directions (up, down, left, and right).[3]



Microtech's attempt to limit claim 9 to restricting movement in only *two* directions is inconsistent with the language of claim 9, inconsistent with the specification of the '889 Patent, and

---

[3] The wedging system need not constrain movement in the front-to-back plane, as this is accomplished within OTF knives by a lock that prevents movement of the blade during loading of the thrust mechanism. *See* '889 Patent, 4:4–6 (the "locking mechanism … lock[s] the blade in the open position and closed position."); 14:53-57 (indicating the blade remains locked from linear motion "by virtue of a positive engagement between lock ball 36 and dowel pin 20b.").

inconsistent with the plain and ordinary meaning of a plane. Accordingly, the Court should reject Microtech's proposed construction and construe the term "constrained from movement in two planes" to have its plain and ordinary meaning or, alternatively, as "to restrict from movement side to side and up and down."

<strong><u>CONCLUSION</u></strong>

Only Elk Creek's proposed constructions are true to claim 9's express language and intrinsic record. Accordingly, the Court should adopt those constructions.

Respectfully submitted,

Date: January16, 2026

**DORSEY & WHITNEY LLP**

*/s/ Anthony W. Brooks*
Anthony W. Brooks (PA ID No. 307446)
**THE WEBB LAW FIRM**
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: 412.471.8815
Facsimile: 412.471.4094
Email: abrooks@webblaw.com

*AND*

Dana M. Herberholz (*pro hac vice*)
Jordan L. Stott (*pro hac vice*)
William Cravens (*pro hac vice*)
101 S. Capitol Boulevard, Suite 1100
Boise, ID 83702
Telephone: 208.617.2550
Facsimile: 208.567.4992
Email: herberholz.dana@dorsey.com
stott.jordan@dorsey.com
cravens.william@dorsey.com

*Attorneys for Elk Creek Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of January, 2026, I electronically filed the within and foregoing instrument with the Clerk of the Court using the CM/ECF system, which caused the following parties and counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

J. Alexander Hershey – ahershey@clarkhill.com

Jason A. Pittman – jpittman@dority-manning.com

*/s/ Anthony W. Brooks*
Anthony W. Brooks