**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELK CREEK CORPORATION,** | ) | |
| **Plaintiff,** | ) | **C.A. No. 1:25-cv-131** |
| | ) | |
| **vs.** | ) | **District Judge Baxter** |
| | ) | |
| **MICROTECH KNIVES, INC.,** | ) | **RE: ECF No.26** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Presently before this Court is Plaintiff/Counter-Defendant Elk Creek's Partial Motion to Dismiss two of Microtech's Counterclaims. ECF No. 26. The motion will be granted in part and denied in part.

## I. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) *citing In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 556 (2007) *citing* 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The complaint need not prove the plaintiff will prevail, but must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Labels, conclusions, and a "formulaic recitation of the elements" are insufficient. *Id.* at 555. Nor must the court accept unsupported inferences or legal conclusions disguised as factual allegations. *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007); *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009).

The Third Circuit has laid out the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and the determine whether they plausibly give rise to an entitlement for relief.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) *quoting Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. The Factual Allegations of the Complaint

Elk Creek Corporation, doing business as Hawk Knives, designs, manufactures, and sells premium out-the-front ("OTF") automatic knives and invests significant resources in protecting the intellectual property embodied in its products. ECF No. 1, ⁋⁋ 2, 10. Defendant Microtech Knives Inc. ("Microtech") makes, uses, sells, offers for sale, and imports into the United States knives that compete directly with those of Hawk Knives. *Id.* at ⁋ 16.

Hawk Knives is the owner of U.S. Patent No. 9,498,889 (the " '889 Patent"), titled "Double Action Automatic Knife." ECF No. 1, ⁋⁋ 1, 7-8, 13. Among Hawk Knives' innovations is its flagship "Deadlock" out-the-front knife, which was launched on April 24, 2015, at the Seattle Knife Show. *Id.* at ⁋ 11. The Deadlock features a wedging system that locks the blade from moving in two planes, solving a previously prevalent problem of blade play in OTF knives. *Id.* at ⁋ 12. Hawk Knives protected this wedging system through the '889 Patent and has continuously marked its Deadlock products with "Pat. #9498889." *Id.* at ⁋ 13. The Deadlock has been recognized throughout the knife industry for its design. Customers and reviewers have compared the Deadlock favorably to competitor knives, including Microtech's products, noting the Deadlock's superior blade stability. *Id.* at ⁋⁋ 14-15.

Hawk Knives alleges that Microtech has been aware of the Deadlock knife since at least June 2021, when Microtech's Chief Executive Officer Tony Marfione publicly expressed enthusiasm for the Deadlock at the June 2021 Blade Show in Atlanta, Georgia. *Id.* at ⁋ 18.

When, in February 2024, Microtech announced a line of "Zero Blade Play" ("ZBP") knives, knife enthusiasts immediately began comparing Microtech's new ZBP products to Hawk Knives' Deadlock, observing that the Microtech Luminary, in particular, incorporated design features strikingly similar to those of the Deadlock. *Id.* at ⁋⁋ 20-21. Hawk Knives identifies the following Microtech products as the "Accused Products": the UltraTech, Luminary, and Atreus knife models, as well as variations branded as Marfione Custom Knives. *Id.* at ⁋ 19. Hawk Knives alleges that the Accused Products incorporate its patented wedging system claimed in the '899 Patent, including the first and second angled surfaces required by the asserted claims. *Id.* at ⁋⁋ 22-27. Based on these allegations, Hawk Knives asserts a single count of patent infringement

under 35 U.S.C. § 271, seeking injunctive relief, compensatory damages, enhanced damages for willful infringement, and attorney's fees. *Id.* at ¶¶ 28-33.

## III. The Factual Allegations of Defendant's Counterclaims

Microtech filed an Answer and Amended Counterclaims denying that the Accused Products infringe any valid claim of the '889 Patent and denies that Hawk Knives is entitled to any relief. ECF No. 24. Microtech also brings four counterclaims against Hawk Knives: I – Declaratory Judgment for Non-Infringement of the Patent; II – Declaratory Judgment of Invalidity of the Patent; III – Unfair Competition/Tortious Interference under the Lanham Act and state law; and IV – Commercial Disparagement under state common law. *Id.*

As to the third and fourth counterclaims, which are the subject of the pending partial motion to dismiss, Microtech alleges that Hawk Knives published false and misleading statements about Microtech and its products to the general consuming public through a publicly available video. *Id.* Microtech avers that the statements falsely claim, among other things, that Microtech stole technology from Hawk Knives, that Microtech has a history of "copying" other manufacturer's products, and that Microtech's products were inferior due to alleged infringement of the '889 Patent. *Id.* at ¶ 19.[1] Microtech further avers that the statements were made in the context of commercial disparagement and generally caused pecuniary loss in the form of reduced

[1] The alleged Subject Statements include:

- That Microtech is "utilizing [Elk Creek's] wedging mechanism";
- That Microtech "copied the shape of [Elk Creek's] stopping pin""
- That Microtech "copied the shape of [Elk Creek's] stop point""
- That, in response to the parties' correspondence leading up to the initiation of the present litigation, Microtech told Elk Creek to "go pound sand"; and
- That Microtech is "utilizing [Elk Creek's] mechanism."

*Id.* at ¶ 36.

product sales, damage to commercial reputation, and tarnishment of Microtech's brand. *Id.* at ⁋⁋ 21-23. Microtech contends this conduct constitutes unfair competition and tortious interference with prospective business relations under applicable state law.

As to the commercial disparagement claim, Microtech asserts that the statements published by Hawk Knives and Mr. Hawk were objectively and subjectively baseless, particularly in light of the information and responses provided to Hawk Knives in the correspondence between Microtech and Hawk Knives prior to the initiation of his litigation. *Id.* at ⁋⁋ 24-30. Microtech avers that the statements were false, defamatory, and published to the consuming public with the intent to deceive Microtech's customers and prospective customers regarding Microtech's commercial practices and products. *Id.* Microtech contends the publication of these statements constitutes defamation and false light invasion of privacy under state law.

## IV. Elk Creek's Partial Motion to Dismiss the Counterclaims

### A. Count III – Lanham Act Claims

Section 43(a) of the Lanham Act prohibits, in relevant part, any false or misleading statement of fact in commercial advertising or promotion that misrepresents the nature, characteristics, or qualities of a product. 15 U.S.C. § 1125(a)(1)(B). A plaintiff must establish: (1) a false or misleading statement of fact; (2) in commercial advertising or promotion; (3) concerning goods or services in commerce; (4) that actually deceives or is likely to deceive a substantial segment of its audience; (5) that is material; and (6) that has caused or is likely to cause injury. *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014) *citing Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011).

In the patent context, a threshold limitation applies. A patent holder's good-faith assertion of its patent rights, including public communication of an infringement claim, does not give rise to Lanham Act liability merely because the accused infringer contests the assertion. *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353-54 (Fed. Cir. 1999) *quoting Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1538 (Fed. Cir. 1985) (for the proposition that a "patent owner has the right to … enforce its patent, and that includes threatening alleged infringers with suit."). To state a Lanham Act claim based on patent assertion statements, a party must plead facts plausibly suggesting that the statements were made in bad faith – that is, that the patent holder knew or had reason to know that the infringement allegations were objectively baseless. *Id.*; *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260-61 (Fed. Cir. 2008).

**1) Infringement Characterization Statements**

Here, Mr. Hawk's statements describing Microtech's products as incorporating Elk Creek's stopping and wedging mechanisms are, at bottom a public recitation of Elk Creek's infringement contentions. The statement that an accused product embodies the claimed features of a patent are exactly the kind of assertion that patent holders routinely and legitimately make in cease-and-desist letters, press communications, and investor disclosures. Elk Creek's decision to convey these contentions via YouTube rather than in a formal demand letter does not transform their character. The critical question is whether Microtech has pled sufficient facts to support a plausible inference the Elk Creek knew or should have known the assertions were objectively baseless.

Defendant's counterclaim does not plausibly allege that Elk Creek's patent is invalid or that its infringement theory lacks any reasonable basis. Instead, it disputes the merits, the precise

sort of disagreement that patent litigation is designed to resolve. At the pleading stage, Microtech's disagreement with Elk Creek's infringement reading is not equivalent to pleading that Elk Creek acted in bad faith. Accepting anything less would effectively chill patent enforcement by exposing every patent holder who publicly announces its claims to counterclaims for damages. *See Zenith*, 182 F.3d at 1353-54.

Accordingly, Elk Creek's motion will be granted as to the portion of the Lanham Act counterclaim premised on the infringement characterization statements. Dismissal is without prejudice to the extent Microtech can plead facts sufficient to satisfy the bad-faith requirement at a later stage of litigation.

**2) No Substantive Response Statement**

The second Lanham Act theory rests on different ground and requires different analysis. Microtech alleges that Mr. Hawk affirmatively stated, in the public video accessible to consumers, that Microtech provided no substantive response to Elk Creek's cease-and-desist letter. According to the Counterclaim, this was objectively false: Microtech sent Elk Creek a detailed written response including a claim-by-claim analysis explaining why each asserted patent claim was not infringed by Microtech's products.

Elk Creek's primary response is that the statement was merely a characterization of the adequacy of Microtech's response – a subjective assessment, not an objective statement of fact. This characterization is not persuasive at the pleading stage. Telling the public that a competitor "made no substantive response" to a legal demand conveys a materially different message than telling the public that the competitor's response was unsatisfactory or unpersuasive. The former suggests the competitor did not engage at all, which communicates indifference, stonewalling, or implicit acknowledgment of wrongdoing. The latter is an evaluation of the merits of an

engagement that undisputedly occurred. Whether the statement can be proven literally false is at least plausible given the specific factual allegation that Microtech provided a detailed, documented response.

Elk Creek's reliance on Microtech's own concession in its brief that the statement was "not literally false" does not resolve the matter in Elk Creek's favor at this stage of the proceedings. Microtech's pleading controls, and it alleges that the statement was false. The concerns about bad faith that drive the Lanham Act framework in patent cases carries less weight here. Whether a competitor responded to a letter is a statement about a fact, not a claim about the scope of a patent or the merits of an infringement allegation. It is a verifiable factual claim about conduct that either occurred or did not, and it is separate from the substantive patent dispute in a way that removes if from the safe-harbor rationale of *Zenith*.

Microtech has plausibly alleged that: (1) Mr. Hawk made a false statement of fact; (2) the statement was made in a commercial context – a public video addressing consumers and the knife market; (3) the statement concerned Microtech's conduct in a manner likely to affect purchasing decisions; and (4) the deception was material in that a consumer aware of Microtech's detailed non-infringement response might reasonably have viewed Microtech's products differently than one who believed Microtech had offered no defense.

Elk Creek's motion to dismiss will be denied as to the portion of the Lanham Act counterclaim based on the "no substantive response" statement. Whether Microtech can ultimately prove the elements of this claim, including actual deception and damages, remains to be determined.

**B. Count IV - Commercial Disparagement Claim**

In order to state a claim for commercial disparagement under Pennsylvania common law, a party must plead: (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does result; (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity. *Brooks Power Systems, Inc. v. Ziff Communications, Inc.,* 1994 WL 444725 (E.D. Pa. Aug 17, 1994).[2] The damages elements is not a mere pleading formality. *See Lucas Ltd., Inc. v. Rick Lucas Plumbing & Remodeling LLC*, 2024 WL 3927216, at * 3 (E.D. Pa. Aug. 23, 2024). Because the tort of commercial disparagement "protects against pecuniary loss" *Zerpol corp. v. DMP Corp*., 561 F.Supp. 404, 408 (E.D. Pa. 1983), this element must be pled with some specificity.

Microtech alleges only in general terms the Elk Creek's statements damaged its business reputation and deterred customers. It does not identify a single customer who declined to buy its products, a specific lost business opportunity, or a quantifiable transaction that failed to materialize because of Mr. Hawk's video. Its one relatively specific allegation is that its sales fell 20% in June of 2025, the month after the video was posted to YouTube, causing more than $117,000 in lost income. *See* ECF No. 24, ⁋ 60. This allegation is legally insufficient. It assumes the video must have caused the decline, but it never identifies any sale that the video cost Microtech. A bare temporal correlation between a statement and a drop in sales does not

---

[2] *See also U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 924 (3d Cir. 1990) ("The distinction between actions for defamation and disparagement turns on the harm towards which each is directed. An action for commercial disparagement is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of his goods have reduced their marketability, while defamation is meant [to] protect an entity's interest in character and reputation.").

plausibly show that pecuniary loss "in fact result[ed]" from the statement, as Pennsylvania law requires. *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 761 A.2d 553, 555-56 (Pa. Super. Ct. 2000), aff'd, 809 A.2d 243 (Pa. 2002); *see also Twombly*, 550 U.S. at 555-578 (facts alleged must raise a right to releive above the speculative level).

Elk Creek's motion will be granted as to the commercial disparagement counterclaim. Dismissal will be without prejudice. If Microtech can identify with reasonable specificity customers or transactions lost as a result of Elk Creek's statements, it may seek leave to amend.

## V. Conclusion

For the foregoing reasons, Elk Creek's partial motion to dismiss will be granted in part and denied in part. The Lanham Act counterclaim based on the infringement characterization statements (part of Count III) and the commercial disparagement counterclaim (Count IV) will be dismissed without prejudice. The Lanham Act counterclaim based on the "no substantive response" statement survives and the parties shall proceed to discovery on that claim. An appropriate order follows.